Good morning and may it please the Court. My name is Margo Niffin for the Appellants. Your Honors, the question before the Court this morning is simple. Should United States citizens have the same access to the benefits of their citizenship and in this case the ability to seek family reunification regardless of how their citizenship is obtained? The answer to this question must be yes. However, the Special Immigrant Juvenile provisions of the INA contain an exclusion clause that USCIS has interpreted to mean that citizens who naturalized through this process are unable to petition their non-abusive parents for lawful status. This interpretation is arbitrary and contrary to the plain language of the statute or alternatively it violates the Equal Protection Clause as to non-abusive parents. I will start by addressing our arguments under the APA. The language of the exclusion clause states that no natural or adoptive parent of an alien provided SIJS shall thereafter by virtue of their parentage be accorded any right, privilege, or status under the chapter. The plain language of the statute therefore expressly indicates that it only applies at the time that the child is an alien. Our Once the child is a United States citizen, why would Congress have to draft a statute that would bar aliens from acquiring benefits that would be available to their parents? It seems inconsistent. By definition an alien would not have any rights to parentage benefits. So what that doesn't make any Well there are there are there are some privileges there are for instance in this case Mr. Fuentes was as a lawful permanent resident he could have applied for his mother to seek parole in place. As a lawful permanent resident the same as an alien? A lawful permanent resident is an alien. Okay. So an alien is defined as any individual who's not a citizen. And so for instance the exclusion clause could have prevented it under the correct reading of the exclusion clause. It could have prevented him as a lawful permanent resident to it could have prevented him to seek parole in place for his mother at that time. However once he becomes a United States citizen pursuant to the plain language of the statute, the exclusion clause should no longer apply to him at that time. And that's exactly what happened in this case. In this case he did apply for his mother after obtaining citizenship and his parole in place application was denied for his mother. Similarly for Mr. Ayala he applied at the time that he had obtained citizenship he applied for an I-130 to seek to petition his mother and it was denied. Let me ask you this because I think I want to make sure I understand your argument because so your argument is that there is only that they're limited in time. This exclusion clause I guess is only only applies between the time of receiving I guess the legal permanent resident under the SIJ and after five years you can apply for citizenship. So you're five years at earliest. So you're saying that the exclusion clause only applies during that period of time. Exactly exactly because of the plain language of the statute. But I guess my next question is but there so under the statute I guess you're saying it Congress drafted this language and it only applies from the time of receiving I guess the SIJ status and applying and becoming a citizen right? Which would could could be as early as five years right? It could be well depending on the the process can take a lot longer. But the earliest would be the earliest could be five years. Yeah so but that during that time you couldn't you would not be able to apply for you would they would not be able to apply for the status for the parents anyway except for maybe one or two exceptions the parole in place like Fuentes and maybe one other one other but so you're saying Congress put that language in there just for those narrow situations? Well it's the parole in place program is one program but it is rooted in deferred action which is actually a broader authority of the executive branch and it can be applied to different programs based on an administrative administration's priorities. For instance the DAPA program or we saw under under President Biden there are a number of prosecutorial discretion memos. So based on the priorities of administration it actually could be a lot broader than specifically the parole in place program that Mr. Fuentes applied under which was specific to two military members. Are you making a facial challenge to the statute or as applied? It's so specific to the... Are you making a facial challenge or as applied challenge to the statute? It's as applied in violation of the Equal Protection Clause as applied to non-abusive parents which is is so there there are two alternative arguments. If the court... Why would it apply to abusive? Why wouldn't it apply to abusive in the past? You make that distinction. Where in the statute do you call that out? They're treated different. You say they should be treated different. But then you say abusive parents should be denied that. How do you read the statute for that division? So in 2008 under the TBPRA the language of the statute was amended. Before that time individuals had to show in order to be eligible for essay exactly that they had to show reunification with one or both parents was not viable due to abandonment, abuse, and neglect. And so since that time an individual can seek SIJS and be granted SIJS based on only one abusive parent and we see that in Mr. Fuentes case. His mother was granted sole custody and so she was the non-abusive parent. However regardless of this change in 2008 and regardless of the importance of family reunification with the non-abusive parent she was then still prevented under the Exclusion Clause from being able to be petitioned for and for Mr. Fuentes to seek that petition for her and that family reunification for her. And so under the Equal Protection Clause it there's a distinction between United States citizens who are able to petition non-abusive parents and those who aren't. And the only reason is because of the individuals were naturalized under the SIJS. And what scrutiny do we give to that? What scrutiny do we give? Is that rational basis or is that strict scrutiny? It's rational basis. Alright well the change may have been to make it easier for the minor to get the status in terms of a protected child because requiring both is a hard task. But only one is required. That was for the benefit perhaps of the child not for the non-abusive parent. Why is that not a rational basis to critique? Because the point is the child is eligible for a lot of benefits. For example, welfare benefits and those things that take care of the child, foster care, all those things. And the point is that that was for their benefit. So whether you're an abusive or non-abusive parent the child has received those benefits. And what they're saying is that after that no parents are in a situation in that. Yes, Your Honor. That's what it says, no parent. And that is the, so it's not the aspect of the statute that allows for one family SIJS, one parent SIJS. It's the aspect of the statute that then when the child does obtain status under the provision that they cannot, they cannot petition their non-abusive parent. And so that's the aspect of the statute that we're challenging. Is it the child or the parent, the non-abusive parent? It's the child's ability to reunify and to seek to petition their non-abusive parent. It doesn't impact unification. It doesn't prevent the unification of the child. They can live with their parent. They can have all those things. How does that interfere with unification? Because if the parent does not have lawful immigration status, they're constantly at the threat of removal. Which creates stress for families. It creates, it creates, you know, for instance, in Mr. Quente's... What status have they been in before that? These are parents who don't have lawful status. What's their status in the country? They're undocumented. They don't have lawful status. So you're saying they're unlawfully here? Yes. And so if the ability... So the statute, you're saying the constitutional rights are violated. A person who is not lawfully here, the 14th Amendment, in that sense, does? Is that your argument? Well, the Equal Protection Clause does apply to both citizens and non-citizens. But our argument is that it's the right of the United States citizen child to seek that family reunification with their parent who does not have status. So after the child has gone through the abuse that they've experienced, the 10 years potentially plus of obtaining their citizenship through this program, they should have the ability then to petition their non-abusive parent for lawful status in order to seek long-term reunification with that parent. But I thought under your interpretation of the statute that it would also allow a citizen, a new citizen under the statute, to petition the abandoning and or abusive parent to gain benefits as well. Is that not your position? Under the APA, and so there are two alternative arguments. If under the APA the court agrees that USCIS's interpretation is arbitrary, it would mean that individuals, once they become citizens, have the ability to petition both parents. However, there are many safeguards in place that USCIS at that time could make that determination of whether the parent was abusive or non-abusive. For instance, in the I-360, when the child petitions for their parent, they have to identify which of the parents they were granted custody under and which a parent was abusive or neglectful. Well, there may be some differentiation at that point, but you're conceding, aren't you, that your interpretation doesn't make, at least initially, a distinction between the parents? Abusive, abandoning, good, bad, it doesn't matter, under your view? So under the APA, if we read the plain language of the statute as drafted, it would not, once the child becomes a United States citizen, they would be able to petition either parent. I would point out that this court in Perez-Cuccinelli, however, indicated that the viability of reunification when looking under the CIJS provisions is not permanent. And so there can be situations that when a child obtains SIJS, there is an abandonment finding as to one parent. However, the viability of reunification doesn't have to be a permanent finding. And so 10 years down the road, there could be circumstances where the child can then reunify with that parent based on changed circumstances, and that reunification is always in the child's best interest. You conceded in response to Judge Gregory's question that as to your constitutional argument, this is a rational basis analysis. And so my understanding of that test is that Congress can legislate, and in legislating, either be over-inclusive or under-inclusive with respect to the rights or detriments that attach to a particular statute. And isn't this sort of a classic example of that? You make some compelling equity policy arguments as to why it seems unfair that a non-abandoning parent would be excluded from the statute, but that's the very definition of rational basis. Some people are harmed. Some people are benefited. But so long as Congress legislates rationally, and that's a pretty low bar, that's all you need. So where's the violation? Where's the constitutional violation? So under the rational basis test, it is a lower bar, but it still does provide some support. And it's not toothless. As the Supreme Court explained in Claiborne, it can't be based on unsubstantiated fear. Here the government has provided no rational basis at all to exclude the non-abusive parents from the importance of family reunification. I thought they cited fraud, the concern that people would intentionally maybe abandon children for purposes of coming back and fouling under your theory. I thought they did cite several reasons. They cited those reasons. But my guess is you don't believe that those will survive rational basis? We don't believe that those survive rational basis. Okay, tell us why. The reason for that is it's important to look at the SIJS process as a whole. The SIJS process is a unique state-federal partnership. And in that way, it's unlike any other process under the INA. Congress has created a number of safeguards to prevent any fraud. The first step of the SIJS process is that you have a state court making the determinations that reunification is not viable and that returning to the child's home country is not in their best interest. Congress acknowledged that state courts are in the best position to be making these determinations. The rules of evidence apply. There's a credibility determination. There are often home visits. And so there is a whole system set up under the state court process to make these determinations. After those determinations are made, the child then has to apply before USCIS. And again, they're put through a whole separate process where CIS looks at everything that was before the state court, and then it makes its own bona fide determination that SIJS was sought for the purpose of escaping abuse and not to seek immigration status. Again, CIS officers can interview individuals and their family members. They can request evidence. And so there are a number of different safeguards in place that Congress created to root out any fraud. And I'll point out, in addition to that, once the I-360 is granted, there continue to be safeguards in place through the adjustment of status process, through the naturalization process. At any time during this sometimes more than 10-year process, an individual could, you know, fraud could be detected. An individual could be removed. The status could be removed. And so there's so many safeguards in place that this idea that individuals will be defrauding the system, again, without any sort of evidence that this is happening, is far-fetched. Thank you, Ms. Nippon. Of course, thank you. We've got some time left for rebuttal. Good morning, Your Honors, and may it please the Court, Elizabeth Spavins, Assistant United States Attorney on behalf of the United States Citizenship and Immigration Services. This case involves a question of statutory interpretation of the clear language of a provision of the Special Immigrant Juvenile Statute, known as the Exclusion Clause. As has been discussed already this morning, the SIJ statute or SIJ classification provides a pathway for an alien child under the age of 21 who has been found by a state court to have been abused, neglected, or abandoned by one or both of his parents, and thus is declared dependent on the court or whom the court has placed in the care of someone appointed by the court and whose best interest is not to be returned to his prior country to obtain lawful permanent residence and ultimately naturalization. Under the Exclusion Clause of the SIJ statute, no natural parent or prior adoptive parent of any alien provided special immigrant status shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status. The district court properly concluded that this clause applies to the plaintiff's mothers here because they are ineligible to obtain immigration status based on their U.S. citizen children. So, this statute essentially creates different classes of citizens, right, with respect to benefits? I mean, is there any other regime where that's the case? Your Honor, I have two answers to that. First, the lens through which to view the Exclusion Clause is the rights accorded to individuals seeking immigration benefits, in this case, the parents, not the U.S. citizen children. And I would point the court to a couple of sources here. First, there are numerous statutes. There are other statutes that limit the ability of a U.S. citizen to petition for an immigrant relative based on aspects of that relative's status. So, let me, I'll let you finish that answer, but you just made a statement that suggests that perhaps the benefits being sought here are not benefits by the parents, but by the children. You say they petitioned. They're the ones that petitioned for their parents. Doesn't that suggest that this is a benefit that endures to the new citizens, not the parents? No, Your Honor. This is an immigration benefit to the parents. This statute legislates and draws a line to individuals that can obtain benefits on their own behalf. It is certainly the case that the petition itself is filed by a U.S. citizen for a parent or another immigrant relative, but that is to obtain the benefit on behalf of the beneficiary, which is the parent. So, I would point to the statute that limits the ability of a U.S. citizen based on age to petition for a parent. The person has to be over 21. That has survived a court review. We cited the cases in our brief at pages 39 to 40. In addition, an individual who is engaged in marriage fraud is thereafter forever prohibited from obtaining benefits regardless of whether they have a U.S. citizen child or not. So, the exclusion clause is a line-drawing statute regarding the provision of benefits to the immigrant parents who are seeking immigration status based on their parentage. And so, for that reason, that is the proper lens with which to view this statute. We cite the Arvey v. Mnuchin case in our brief, which is another example of U.S. citizen children arguing that their rights were impacted because of the immigration status of their parents. And the court's analysis illustrates that the proper lens with which to view these line-drawing statutes with regard to immigration benefits is the person who is obtaining the benefit. In addition, there's no dispute that rational basis applies here. So, even if the court were to view this as a distinction somehow with regard to the U.S. citizen, for numerous reasons, this survives rational basis review. Let me ask you about that. So, the statute has evolved, and now we have this process by which the state juvenile courts first make these findings with respect to the status of the parents and who's an abandoning or abusive parent and who's not. That would seem to suggest that there was some reason for making that distinction, but then the statute then ignores all of that and says it doesn't matter who abandoned, who abused. We're not going to make that distinction. Everybody is going to be excluded. That seems a little bit odd, if not irrational. Your Honor, I would respond in a couple of ways. First, the revisions in 2008 actually don't instruct or require state courts to determine who is an abandoning parent and who is not. It is certainly the case that in the case of Mr. Fuentes, his mother was awarded custody, so it seems clear that the father is the abandoning parent in that instance, but that's not required under the statute. For example, for Mr. Ayala, the state court determined, only said, I'm finding under this statute that one or both have abandoned, abused, or neglected. There's nothing on the face of the court's decision that indicates it was only one parent, and indeed, this is in the joint appendix, the underlying paperwork and motion that was filed to the state court actually discusses both parents' conduct, and Mr. Ayala was, his custody was awarded to his uncle, not either parent. So first, I would say the amendment of the statute doesn't actually result in the state court making a determination about one parent versus the other, so that's the first answer. The second answer is that Congress could have had many reasons, there are many rational reasons to support the exclusion clause as written in its plain language, which did not change when they made the 2008 other change. So first, it can be inferred under canons of statutory interpretation that when Congress changes one thing but not something else, that they chose that, they could have changed the exclusion clause, but they didn't. Second, there are other reasons that Congress could, there are rational reasons that Congress could maintain the exclusion clause as written, notwithstanding the broadening of availability of benefits. As Judge Gregory pointed out, the 2008 amendments broaden, they make it a little easier for a child to obtain SIJ status, but that is a rational basis on its own. The 2008 amendments do not need to be supported by all concomitantly broadening the application, or broadening the availability of benefits for parents. Congress could, as noted in our brief, Congress could rationally create an immigrant classification that opens the door to some people but not others, so they can open the door to children while deciding that that special vulnerable population deserves benefits but not another population such as their parents, number one. Number two, the rational concerns about broad and potential abuse of the system may persist regardless of whether it's one or both parents, and so there are numerous rational reasons that survive the conceitedly low bar of rational basis review. I suppose Congress could have just eliminated the program altogether and not created it, right? Certainly. What we are tasked with is reading the language that Congress wrote and has left in place since 1990, which is this exclusion clause, but that's right, Your Honor, there's no argument here that Congress has to have an SIJ program at all. Right, but once having created it, at least they still would have to satisfy if Congress, a rational basis for making this distinction. So, for example, if the statute had said that only the parents of children who were born in the month of June would be allowed into the country, you would concede maybe that that's a little bit irrational, even that might not pass the smell test? I don't think, understanding, taking the court's hypothetical, I don't think the statute as drafted is anywhere near that. I didn't say that. I'm just asking you about that example. Rational basis review is certainly review. It is not a rubber stamp or a blank check to bless anything that Congress does. Nevertheless, some amount of over-breath, over-inclusiveness, under-inclusiveness is permitted, and indeed the standard is that it has to be any reasonably conceivable set of facts that could provide a rational basis for the classification. Here, that is satisfied. I don't know that it's a limitation. What are the facts? What are the facts that support? Because your colleague on the other side said there's just no factual basis for this distinction. Sure, so the set of facts, which is, again, it's conceivable. It doesn't have to be a set of facts that Congress spoke about or articulated at the time. It's simply, standing here today, is there a conceivable set of facts? So the first is, is it conceivable that Congress could create a program for benefits that draws a line between children and their parents? Yes, that is a conceivable, reasonable, rational basis to support immigration benefits line drawing. Numerous courts support the general proposition that when this line drawing happens in statutes, it survives rational basis. Number two, the possibility of fraud in the system and or abuse. Your opposing counsel says that there are safeguards in place. That argument is not rational because there are safeguards in place throughout the process, throughout the family court process, that would prevent fraud, therefore making your fraud argument irrational. Right, the first answer I would say to that is, there's no reason that the exclusion clause isn't just yet another statutory safeguard against fraud. Statutes can be, can have, you know, overlap, belt, and suspenders approaches. There isn't any canon of statutory interpretation that says, because the statute has some safeguards against fraud, that other safeguards against fraud are therefore irrational. The exclusion clause is designed like other safeguards. A rational, a reasonable set of facts supports the exclusion clause because for the same reasons that Congress may have enacted other safeguards against fraud, this is one of them as well. There, it's not only fraud, it's also the potential for abuse. A conceivable set of facts is that an abusive parent then years later continues that abuse and asks the petition, the child to petition for benefits on their behalf. Congress may have wanted to prevent that possibility. I don't think the safeguards that opposing counsel pointed out necessarily address that issue because that set of facts contemplates that nothing has changed about the abusive parent at all. So no amount of safeguards against classifying that person as abusive would change the availability of benefits. And I would again point out that there's no basis in Plaintiff's Appellant's argument concedes this. Their argument in no way distinguishes between abandoning and non-abandoning parents because the language of the statute simply doesn't bear that distinction. And so indeed, under their argument, they would be opening the door to this possibility of abuse of the system and there would be nothing to stop it because the plain language of the statute doesn't contemplate any difference between abandoning and non-abandoning parents. And again, when Congress did expand one aspect of SIJ, they did not expand this and this court may interpret, one of the canons of statutory interpretation is that this court may interpret Congress's silence as evidence that they intended not to change the exclusion clause. Briefly returning to my statutory interpretation points, I just wanted to return to a number of canons that support the plain language interpretation here. Plaintiff's argument focuses on the word alien out of context, which is not how this court interprets statutes. Rather, the term alien is viewed in the context of all the other words in the statute, which this court should give meaning to. In particular, the phrase shall thereafter is rendered a nullity under Plaintiff's argument. In addition, the clear language that parents by virtue of such parentage be accorded any right, privilege, or status, that broad language is not given meaning under Plaintiff's proposed interpretation. Indeed, Plaintiff's interpretation would render this exclusion clause extremely limited, which is another problem with their interpretation, as this court was asking before. Under Plaintiff's argument, the only preclusion or exclusion here would be abandoning or non-abandoning parents petitioning for benefits during the window in which the child has become an LPR but before they are a citizen. Plaintiff appellant has only pointed to one benefits avenue in that instance, which is the parole employees. They're notwithstanding the other hypotheticals about what different regimes could, different schemes that could be thought up with regard to permanent resident could petition on behalf of their parent. The only one that's identified in this case is the parole in place. Really, the benefit of being a lawful permanent resident, you can't petition on behalf of your parent with an I-130. You have to be a citizen. So that Plaintiff's reading really significantly narrows the exclusion clause, which is divorced from the plain language. The clear plain language of no parent, any alien, and shall thereafter. In addition, Plaintiff's argument would result in the absurd result, again, of allowing both parents to, a citizen to petition for benefits for both parents, and there's no reason to think that the statute would support that reading. If the court has no further questions, we ask that the district court's decision be affirmed.  Thank you very much, counsel. Ms. Nippon. I just wanted to briefly point out that opposing counsel mentioned for Mr. Ayala that it was unclear from the record which a parent was abandoning and which was not. And there was actually, if you look at the findings of the state court, it's specifically on page 47 of the joint appendix, it's clear that while the finding of abandonment was specific to his father, while there were findings that his mother couldn't care for him, it was clear throughout the record that the father was the abandoning parent in that situation. And I think that regardless, even if it would be unclear from the record in that case, it could be denied, you know, the status could be denied, the petition of the parent could be denied if the record was unclear from CIS. I also wanted to briefly address the issue of line drawing that opposing counsel brings up, that it's that line drawing and the legislation, immigration legislation is a rational basis. And while Congress can pass laws to legislate around immigration, once those lines are drawn, individuals from the same group cannot be subjected to disparate treatment, disconnected from a rational government interest. And so that is to the extent that the USAS is trying to water down the rational basis test to say that, oh, that Congress can legislate, there still needs to be a rational basis. And that's what we don't see in this case. Your colleague gave at least one example that I recall of distinctions and limitations with respect to benefits accorded citizens, one related to age and being able to petition certain, I guess, parents or relatives based on age. And that seems to have survived judicial scrutiny. So it seems like Congress can make those distinctions, no? Again, Congress can make those distinctions, but once the distinctions are made, individuals within the same subset cannot be, cannot be subjected to different treatment. And so in this case, individuals who are United States citizens cannot irrationally be subjected to disparate treatment, solely because of the way they naturalized in this case, because of seeking naturalization through the SIJS provisions. And so that is, that's the distinction here. And courts have always acknowledged that while, again, while Congress does have the authority to legislate around immigration, there is still the rational basis.  then they shouldn't be able, shouldn't be prevented from having abusive parents as well get the benefit. So it would have to be the logical extension of the argument, right? As to abusive parents, there could be a rational basis. Oh, really? Why? Why? The child is now an adult and they have reunification. And like I said, you know, it's people change. And I think you were alluding to that before.  Because that's your argument. So once you receive that, then it shouldn't be any difference. And why should it make a distinction? You can have a benefit for the abusive parent, just like you could a non-abusive parent. For the non-abusive parent, there could be more. I'm talking about the abusive parent, on the abusive parent. Why shouldn't they be able to, under your logic, they should be able to do it. You said there should be no distinction. They're a citizen. Why shouldn't they be able to have the former abusive parent receive that benefit? Well, again, I think that because there is potential, a history of abuse, there could be more of a rational basis than for the non-abusive parent, when there's no basis in the record of abuse. And again, there are multiple safe guards in place that Congress has created to determine that that parent is not, there's no basis, there's no history of abuse. That would prevent that child from petitioning that they're a non-abusive parent. Now if you talk about all kinds of safe guards, isn't it true that since this is a collaboration between the federal government and the state government, i.e. juvenile domestic courts, right? That's where it happened. The child, that doesn't have to be a parent at all. A person, a child could be determined to receive this benefit by the fact that nobody is here to represent the child. And therefore, since we know the child was born, therefore it had to be born, you have parents, and none of them are here. So now you are an abandoned child. Right? Is that right? That's right. All right, so then no parent is, right, is abused, right? So under your rule then, either parent could come up late and say, I've never been found abusive, then I get this benefit, right? That is correct. If there's no finding yet, that is correct. But isn't that the part of the thing, that's the rational basis, is the point is that once you do it here, then we don't get into trying to figure out who is abusive and who's not, and those kind of things. Once the benefit is there, I mean once the child gets the benefit, then it's whether or not the other person, we don't have to go back and find out what your status is. If you're a parent, you can't get the benefit by the way of this child. That's what kind of line drawing is that way. That's why a rational basis is that, listen, the child has been taken care of. Like I said, welfare benefits, the state provides those, you know, right? That comes out of the state's coffers, not the federal government necessarily, and that's done, and then now somebody comes and says, okay, I wasn't abusive. Nobody found it, so this child now can help me become a citizen. And Congress said no. For whatever reason, because you can abandon a child for good or bad reasons. As a matter of fact, sometimes for love, people abandon their children. They say, I can't take care of this child. Please, somebody step in the breach, right? So in that sense, everything's negative. Abandoned, right? You don't know what that is, so Congress said, let's give this child what he or she needs, and it's not going to be later leveraged for another benefit for a person who's a parent because you can't go back and figure that out, and that's what rational basis are. You mentioned the word line drawing. I think that's what Congress does, and it does it in many ways, but go ahead. Time is out, and Chief is very indulgent. I appreciate that, but I'm sure he'll let you. Yeah, please respond. I think that I would respond by saying that family reunification is always in the best interest of the children, and at bottom, the SIJS provisions were always created at every step in the statutes, many amendments, they were always created to protect vulnerable children, and especially the 2008 amendments under the TVPRA were meant to expand and to further protect these vulnerable children. The ability of these children to reunify and to seek permanent stability is again because these children have been through a history of abuse. That is always in the best interest of the child at the end of the day to be able to reunify and seek stable relationship with parents who did not abandon or abuse them, and because that is the purpose of the statute at the end of the day, that is the best reading of the exclusion clause. All right, thank you, counsel. Thank you so much. I want to thank both counsel for their fine arguments this morning. We'll come down and greet you, and then move on to our second case. Thank you.
judges: Albert Diaz, Roger L. Gregory, DeAndrea Gist Benjamin